Telia U. Williams, Esq.
LAW OFFICE OF TELIA U. WILLIAMS
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
702-835-6866
teliauwilliams@telialaw.com
*Attorney for plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ASTRID LUCAS, an individual; STEPHANIE WHITE, an individual; LAS VEGAS CPA PROFESSIONALS, a Nevada entity; <br><br> Plaintiffs, <br><br> vs. <br><br> BARLOW DOUGLAS & HALL, a Nevada entity; DAVE HALL, an individual; BRETN BARLOW, an individual; <br><br> Defendants, | Civil Action No.: <br><br> **COMPLAINT** <br><br> **JURY TRIAL REQUESTED** |

Plaintiffs Astrid Lucas, Stephanie White, and Las Vegas CPA Professionals hereby allege and complain, upon personal knowledge as to themselves and their own acts, and upon information and belief, as to all other matters, as follows:

### I.   INTRODUCTION, JURISDICTION, AND VENUE

1. This is an action for damages brought by individual plaintiffs, former employees, and a corporate plaintiff, for damages arising from violations of federal and state law.

2. It is expected that this complaint will be amended, upon authorization by the Equal Employment Opportunity Commission (EEOC), to include violations of the laws of the United States of America, in particular Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-16, and the Civil Rights Act of 1991, 42 U.S.C. 1981a, as well as equivalent law of the State of Nevada for employment discrimination, in which the individual plaintiffs allege a series of discriminatory conduct, including in the terms and conditions of their employment, because of their gender. (However, at the present time, the individual plaintiffs must await a "Right to Sue" from the EEOC).

3. This claim also aims to redress violations by defendants of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. The individual plaintiffs, Astrid Lucas and Stephanie White, assert that the defendants misclassified them as independent contractors, and accordingly failed to pay them their proper salary, benefits, and/or overtime compensation in violation of FLSA.

4. This claim also alleges violations of state law, specifically involving defamation and interference with business relations.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sec. 1331 and 1332(a), and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. sec. 1367.

6. Declaratory and injunctive relief are available pursuant to 28 U.S.C. §§2201 and 2202.

7. Venue in this district is proper pursuant to 18 U.S.C. sec. 1965 and 28 U.S.C. sec. 1391 because defendants are subject to personal jurisdiction in this judicial district and reside and/or transact business here and all of the events complained of occurred in Nevada, or have their nexus in Nevada.

8. This court may acquire personal jurisdiction over defendants, which are all present in Clark County, Nevada, and/or do regularly do business in Clark County, Nevada.

## II. JURISDICTION, VENUE, AND PARTIES

1. Plaintiff Astrid Lucas is an individual and a resident of Nevada.

2. Plaintiff Stephanie White is an individual and a resident of Nevada.

3. Plaintiff Las Vegas CPA Professionals is a Nevada limited liability company.

4. Defendant Barlow, Douglas, and Hall is, upon information and belief, a Nevada limited liability company.

5. Defendant Dave Hall is, upon information and belief, an individual and resident of Nevada.

6. Defendant Brent Barlow is, upon information and belief, an individual and resident of Nevada.

7. At the time of the actions alleged in this Complaint, Mr. Hall and/or Mr. Barlow were acting within the course and scope of their agency, partnership, joint venture, corporate office, and/or employment status.

8. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. sec. 1964, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. sec. 1367.

9. Declaratory relief is available pursuant to 28 U.S.C. secs. 2201 and 2202.

10. Venue in this District is proper pursuant to 18 U.S.C. sec. 1965 and 28 U.S.C. sec. 1391 because defendants are subject to personal jurisdiction in this judicial district and reside and/or transact business here and the conduct complained of occurred here.

11. This court may acquire personal jurisdiction over defendants, which, upon

information and belief, are all present and/or reside in Clark County, Nevada, and/or regularly do business in Clark County, Nevada.

12. Venue is proper in this court as all of the events complained of occurred in Nevada, or have their nexus in Nevada.

### III. GENERAL FACTUAL ALLEGATIONS COMMON TO ALL CLAIMANTS AND CAUSES OF ACTION

13. On or near January 10, 2014, Stephanie White sold her accounting practice, consisting of her client list and tangible business assets to Dave Hall & Associates for the sum of $180,000.00.

14. Part and parcel of the agreement was that Ms. White would stay on as an "independent contractor" for a period of approximately two years. In that capacity, Ms. White agreed to work exclusively for Dave Hall & Associates during that period.

15. At some point, in or near January 2015, Dave Hall & Associates merged with Barlow & Douglas, forming Barlow Douglas & Hall ("the firm"), with Dave Hall and Brent Barlow, individual defendants, as partners.

16. Dave Hall required Ms. White to have the firm's phone system installed at Ms. White's home office. Ms. White also held a title with the firm, maintained business cards, used the company's email system (along with email address), and full access to their accounting and computer systems.

17. Ms. White was permitted to work remotely, but was required to attend team meetings with the firm, and was held to sales goals.

18. The compensation that Ms. White received was one-half (½) of what she billed clients. (For example, if she billed 15k per month, she was paid 7.5k). Ms. White

was also entitled to "first right of refusal" on all bookkeeping-related work.

19. Astrid Lucas was also deemed an "independent contractor," but was actually an employee of the firm, as well. Ms. Lucas worked at the firm's offices, and at home, as did the rest of the firm's employees.

20. Ms. Lucas did not set her own hours, or have control over her work product, clients, and/or other items that would normally be associated with an independent contractor.

21. Ms. White and Ms. Lucas were the only individuals designated as independent contractors with the company (with the exception of Ms. White's husband).

22. The company also used employees, who also worked from remote locations, but received W-2 forms.

23. At that time that the firm was founded (after the merger), Ms. White and Ms. Lucas were compelled—without additional consideration or notice—to sign new non-solicitation agreements.

24. Approximately a year after the founding of the firm, in January 2016, Ms. White and the firm renegotiated her compensation. The firm agreed to pay Ms. White $132,000 per year, plus 5% commission of new business, above and beyond $400K. In addition to Ms. White's regular workload, she was assigned the role of managing the bookkeeping/accounting department and staff.

25. On December 9, 2016, Astrid Lucas gave her resignation, which the firm accepted, along with her two-week notice. Ms. Lucas' last day in the office was to be December 23, 2016.

26. Nonetheless, the firm abruptly terminated Ms. Lucas' employment, and moved up her last day to December 15, 2016. The firm did not provide Ms. Lucas time to transition

over her clients to the firm, or re-assign them to new staff there, nor to provide a memorandum of what she had been working on. Nor did the firm request a meeting at any time with Ms. Lucas to discuss any of the foregoing.

27. On January 12, 2017, Ms. White met Dave Hall in person to give her notice of resignation. Ms. White and Mr. Hall arranged at that time a mutually satisfactory plan of client transition. Ms. White was to continue working on client files—even as she would be working at, or for, a different company and/or— until January 31, 2017.

28. Ms. White and Ms. Lucas decided to form an entity, Las Vegas CPA Professionals, wherein they would provide accounting and bookkeeping services, in which they are equal partners.

29. On January 16, 2017, Ms. White went over the entire client list that she managed with her prospective replacement at the firm, as well as the work and year-end status of each client. She and her replacement arranged a mutually satisfactory plan of client transition.

30. Additionally, Ms. White and her replacement scheduled a meeting for January 20, 2017. Ms. White notified all concerned at the firm about the meeting, including each of the partners, by email.

31. At that meeting, which lasted two hours, Ms. White and her replacement discussed the transition of clients of the firm.

32. Defendant Brent Barlow attended this meeting, at which any and all issues involving Ms. White's transition from the firm was addressed and resolved. Moreover, after that meeting, Ms. White spoke several times with her replacement regarding client transition, as was well understood by Mr. Barlow, Mr. Hall, and the firm.

33. Also at that January 20 meeting, Ms. White handed over all client documents that would not be completed prior to her agreed-upon last day of January 31, 2017. Brent Barlow, Ms. White, and her replacement, agreed and/or understood that Ms. White, along with her husband, Willie White (who was also an employee of the firm), would finish up remaining work for the firm's clients.

34. In that regard, Ms. White would also retain certain office equipment and proprietary information, until February 1, 2017. That office equipment consisted of a telephone system, laptop computer, and the requisite proprietary client electronic access.

35. Ms. White updated the bookkeeping spreadsheet (which she also reviewed with her replacement during the aforementioned meeting, and in telephone conversations).

36. This spreadsheet, available to all in Ms. White's former department, was regularly updated by the firm's bookkeeping staff.

37. Nearly all of Ms. White's clients were transitioned and their files moved over to the staff member handling them at the firm. It was no secret to any of the partners of the firm, which matters that Ms. White was continuing to work on, as well as which clients had been transitioned to the firm's staff, and what matters upon which Ms. White was still working.

38. Despite this well-ordered and mutually-agreed upon arrangement, Mr. Hall and Ms. Barlow had a lawyer (upon information and belief, the brother of Mr. Barlow), to send a letter implicitly accusing Ms. White and Ms. Lucas of violation their non-solicitation agreements.

39. In addition, Mr. Hall sent an angry, threatening letter to Ms. White accusing her of soliciting clients of the firm.

40. At no point had either Ms. White or Ms. Lucas deliberately or inadvertently solicited each other and/or clients of the firm.

41. Instead, some clients who had enjoyed working with Ms. White and/or Ms. Lucas, naturally, decided that they preferred to continue working with either and/or both of them.

42. Ms. White's last day was to be January 31, 2017, the date that she originally offered as the effective date of her resignation. However, upon receiving the correspondence sent directly and/or indirectly by the defendants accusing her of wrongdoing for doing the very job that she had been instructed to do in completing her duties.

43. Concluding that it was prudent that she should immediately stop working for the firm, on or near January 30, 2017, Ms. White sent an email and letter to her clients letting them know that she would not be completing her projects on their files. This was especially important as January 31, 2017 was a tax deadline for these clients. Inasmuch as no one at the firm worked on these files, aside from her, Ms. White needed to let them know that someone at the firm would contact them about their files.

44. But this also allowed the clients to know that if they did *not* hear from someone at the firm, that they would need to contact someone at Barlow, Douglas & Hall as Ms. White was no longer working on their matter. However, Ms. White reassured the clients she contacted that they were in good hands.

45. Finally, Ms. White included her contact information and offered to answer any questions that anyone might have.

46. Ms. White wrote to one or more of the firm's partners letting them know that her resignation was effective immediately.

47. Ms. White and Ms. Lucas arranged for any equipment that Ms. White was entrusted with by the firm, to be returned to the firm.

48. Soon thereafter, the firm contacted Ms. White and Ms. Lucas, now partners of the accounting firm, Las Vegas CPA Professionals, demanded a meeting, and threatened them with legal action, claiming that Ms. White's announcement of her resignation was soliciting the firm's clients.

49. Upon information and belief, not a single client of the firm who had been contacted by Ms. White, defected to Las Vegas CPA Professionals, after Ms. White's letter or as a consequence of it.

50. Ms. White provided the firm a spreadsheet memorandum of the status of outstanding work to be done on clients remaining with BDH. Ms. White also gave the firm a spreadsheet containing the list of clients whom she had sent her notice of separation from the firm in time for the tax deadline. (This information was already available to the firm as Ms. White accessed the same employee database that the firm maintained for her client assignments).

51. After the plaintiffs sent this letter to Mr. Hall, they received an email from Mr. Barlow, again accusing them of violating their non-solicitation agreements, and making further demands of them.

## IV.

## **FIRST CAUSE OF ACTION**

**(Declaratory Relief—All plaintiffs against all Defendants)**

52. The foregoing allegations in the preceding paragraphs are repeated and incorporated as if fully set forth herein.

53. A declaration of the rights, duties and obligations between and among the parties as they relate to Barlow, Douglas & Hall's (the firm's) assertions relating to what is the proper conduct obliged of Ms. White, Ms. Lucas, and/or Las Vegas CPA Professionals with respect to the current and/or former clients of the firm, particularly with respect to the non-solicitation agreement entered into by and among the parties, as well as between Ms. White and Ms. Lucas regarding the non-solicitation of employees.

54. This court should find that the non-solicitation agreement is invalid as it unreasonably restrains the individual plaintiffs from conducting their profession or trade, and such clauses in the agreement regarding clients and/or employees should be found invalid and/or unenforceable.

55. Alternatively, this court should find that the interaction that Ms. White and/or Ms. Lucas had with clients in their transition from the firm to their own business does *not* violate their non-solicitation agreements.

56. Moreover, this court should declare what the rights and/or duties oblige the parties going forward.

57. Hence, a justiciable controversy of adverse legal interests is ripe for review and declaration by this court.

///

///

///

# SECOND CAUSE OF ACTION

**(Fair Labor Standards Act—
Plaintiffs Astrid Lucas and Stephanie White against Barlow Douglas & Hall)**

58. The foregoing allegations in the preceding paragraphs are repeated and incorporated as if fully set forth herein.

59. The federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq.,* (FLSA), is a remedial statute designed to ensure that employees are paid appropriately, and receive the just rewards for their labor, as well as to ensure that appropriate withholdings are taken, and workers' compensation and taxes are paid for employees.

60. Barlow Douglas & Hall falsely designated Ms. Lucas and Ms. White as independent contractors, but this was in name only, as they were more properly to be considered employees.

61. Despite the façade of independent contractor work, the actual contract agreement(s) with Ms. Lucas and Ms. White, and/or their actual work performed, and the relationship between the individual plaintiffs and Barlow, Douglas & Hall indicated that the firm had the exclusive authority to control almost all aspects of the women's work, including among other things, customer relations, negotiations of customer contracts, assignment of work, manner in which work is to be performed, and materials and equipment to be utilized.

62. Barlow, Douglas & Hall exercised significant control over the individual plaintiffs' work, and controlled the essential elements of their purported "independent contractor" business.

63. Furthermore, neither Ms. Lucas nor Ms. White worked for any other businesses, and/or as independent contractors in any other capacity during their tenure with Barlow, Douglas, & Hall.

64. Barlow, Douglas & Hall's business model, at least vis-à-vis the individual plaintiffs, as described above and throughout the factual allegations of this complaint, violates the broad remedial protections afforded by the FLSA.

65. Clearly, the individual plaintiffs were misclassified as independent contractors. Instead, they were employees of the firm. Because they were not actually independent contractors, the individual plaintiffs are entitled to be reimbursed for social security and taxes paid, as well as to any other employee benefits that they should have received, as well as any back pay and/or overtime.

### **THIRD CAUSE OF ACTION**

**(Defamation—All Plaintiffs against All Defendants)**

66. The foregoing allegations in the preceding paragraphs are repeated and incorporated as if fully set forth herein.

67. Upon information and belief, the defendants have defamed the plaintiffs by asserting and/or insinuating to former and/or current clients that Ms. White and/or Ms. Lucas were unqualified, dishonest, or incompetent as professionals.

68. Upon information and belief, the defendants have told former, current, and/or prospective clients of Ms. Lucas and/or Ms. White that the latter violated their non-solicitation agreements.

69. Upon information and belief, the defendants continue to disparage the character, competence, and professional integrity of Ms. White and/or Ms. Lucas, which has hurt their ability to attract business to their new company.

70. Upon information and belief, the defendants have also made negative comments against Las Vegas CPA Professionals.

71. The negative statements against the plaintiffs made by, and/or on behalf, of the defendants are patently false and defamatory.

72. Moreover, defendants accused plaintiffs of being incompetent, and/or committing misconduct in their profession, which was untrue, and defamatory *per se*.

73. Defendants were at least negligent in making the statement.

74. Defendants' publication of their false and defamatory statements against plaintiffs was unprivileged.

75. Plaintiffs sustained actual or presumed damages as a result of the statement.

### **FOURTH CAUSE OF ACTION**

**(False Light—All Plaintiffs against All Defendants)**

76. The foregoing allegations in the preceding paragraphs are repeated and incorporated as if fully set forth herein.

77. Barlow, Douglas, & Hall and the individual defendants have cast a false light on the actions and conduct of the plaintiffs, publishing their negative and false statements to more than one person, and causing emotional harm to the plaintiffs.

78. The defendants published negative information about the plaintiffs that portrayed them in a false or misleading light.

79. That information was highly offensive or embarrassing to a reasonable person of ordinary sensibilities.

80. The defendants published the information with reckless disregard as to its offensiveness or embarrassment potential.

## **FIFTH CAUSE OF ACTION**

**(Injunctive Relief—All Plaintiffs against all Defendants)**

81. The foregoing allegations in the preceding paragraphs are repeated and incorporated as if fully set forth herein.

82. Barlow, Douglas, & Hall and the individual defendants must cease defaming the plaintiffs to any extent they continue it.

83. The defendants must stop defaming or putting into a false light any and/or all of the plaintiffs, and making threats of any kind to them, and/or holding themselves out to be in association with them.

**WHEREFORE**, Plaintiffs pray judgment against defendants, as follows:

1. For a jury trial, if necessary, upon all issues;
2. For compensatory damages;
3. For punitive damages;
4. For declaratory and injunctive relief;
5. For costs of suit incurred;
6. For prejudgment and post-judgment interest as provided by law.
7. For such other and further relief as the court may deem proper.

    Dated this 13th day of February, 2017.

                          /s/ Telia U. Williams, Esq.

                          Telia U. Williams, Esq.
                          LAW OFFICE OF TELIA U. WILLIAMS
                          10161 Park Run Drive, Suite 150
                          Las Vegas, NV 89145
                          Tel.: (702) 835-6866